IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., | ) ) ) | Case No. 17-cv-02575 |
| Plaintiff, | ) ) | **Judge Andrea R. Wood** |
| v. | ) ) ) | **Magistrate Judge Maria Valdez** |
| CHENGSKY2013, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Western Digital Technologies, Inc. ("Plaintiff" or "Western Digital") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. The Western Digital Trademarks and Products ...................................................... 2

    B. Defendants' Unlawful Activities ............................................................................. 3

III. ARGUMENT ..................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

    B. Western Digital Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims ................. 6

    C. There Is No Adequate Remedy at Law, and Western Digital Will Suffer Irreparable Harm in the Absence of Preliminary Relief .......................................... 8

    D. The Balancing of Harms Tips in Western Digital's Favor, and the Public Interest Is Served by Entry of the Injunction ........................................................................ 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ......................................... 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the WD Trademarks Is Appropriate ............. 10

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate .............................. 11

    C. Western Digital Is Entitled to Expedited Discovery ............................................ 12

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 13

VI. CONCLUSION ................................................................................................................ 13

**MEMORANDUM OF LAW**

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Western Digital Technologies, Inc. ("Plaintiff" or "Western Digital") is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Western Digital's Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale and selling unauthorized and unlicensed counterfeit products, including digital storage devices and systems, using counterfeit versions of Western Digital's federally registered trademarks (collectively, the "Counterfeit Western Digital Products"), through various fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Western Digital Products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Western Digital is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Western Digital Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Western Digital respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.   STATEMENT OF FACTS

### A.   The Western Digital Trademarks and Products

Founded in 1970, Western Digital has a long history in the electronics industry. *See* Declaration of Cynthia Tregillis (the "Tregillis Declaration") at ¶ 4. For more than 40 years, Western Digital has been a leading developer and manufacturer of storage technologies and solutions that enable people, businesses, and other organizations to create, leverage, experience and preserve data. *Id.* As an industry leader, Western Digital only produces and offers products that have been subjected to its rigorous manufacturing standards and stringent pre-shipping testing and quality control. *Id.*

Western Digital is an internationally recognized manufacturer, distributor and retailer of a broad range of products, but its primary products include hard disk drives, solid state drives, and other related digital storage products and solutions, all of which prominently display its famous, internationally recognized and federally registered trademarks (collectively, the "Western Digital Products"). *Id.* at ¶ 5. Western Digital Products have become enormously popular, driven by Western Digital's arduous quality standards and innovative design. *Id.* at ¶ 6. In the United States and around the world, the Western Digital brand has come to symbolize high quality and reliability in data storage solutions, and Western Digital Products are among the most recognizable digital storage products in the world. *Id.*

Western Digital incorporates a variety of distinctive marks in the design of its various Western Digital Products. *Id.* at ¶ 8. As a result of its longstanding use, Western Digital owns common law trademark rights in its WESTERN DIGITAL, WD and other trademarks. *Id.* Western Digital has also registered its trademarks with the United States Patent and Trademark Office. *Id.* Western Digital Products include at least one of Western Digital's registered

trademarks. *Id.* Western Digital uses its trademarks in connection with the marketing of its Western Digital Products, which are collectively referred to as the "WD Trademarks." *Id.*

The WD Trademarks are exclusive to Western Digital and are displayed extensively on Western Digital Products and in Western Digital's marketing and promotional materials. *Id.* at ¶ 10. Western Digital Products have long been among the most popular and recognizable digital storage products and solutions in the world, and have been extensively promoted and advertised at great expense. *Id.* In fact, Western Digital has expended millions of dollars annually in promoting and marketing featuring the WD Trademarks. *Id.*

Since at least as early as 1992, Western Digital has operated a website where it promotes and sells genuine Western Digital Products at wdc.com. *Id.* at ¶ 12. Sales of Western Digital Products via the wdc.com website represent an important portion of Western Digital's business. *Id.* Western Digital's website wdc.com features proprietary content, images and designs exclusive to Western Digital. *Id.*

Western Digital has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the WD Trademarks. *Id.* at ¶ 13. As a result, products bearing the WD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Western Digital. Western Digital Products have become among the most popular of their kind in the world. *Id.* The widespread fame, outstanding reputation, and significant goodwill associated with the Western Digital brand have made the WD Trademarks invaluable assets of Western Digital. *Id.*

**B.     Defendants' Unlawful Activities**

The success of the Western Digital brand has resulted in its significant counterfeiting. *Id.* at ¶ 15. To combat against counterfeiting, Western Digital routinely investigates suspicious storefronts and listings on online marketplaces, including the Defendant Internet Stores that were

3

offering for sale and selling Counterfeit Western Digital Products to consumers in this Judicial District and throughout the United States. *Id.* Despite Western Digital's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. *Id.* Western Digital's well-pled allegations regarding similarities among the Defendant Internet Stores and the Counterfeit Western Digital Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. *Id.* at ¶¶ 19, 20. In the event that Defendants provide additional credible information regarding their identities, Western Digital will take appropriate steps to amend the Amended Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Western Digital's reputation and the goodwill symbolized by the WD Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the WD Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will modify registration data and content and move any assets from U.S.-based bank accounts, including PayPal accounts. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-7. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in

4

infringing merchandise are often useless if notice is given to the infringers"). As such, Western Digital respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the WD Trademarks. *See* Amended Complaint at ¶¶ 2, 15, 24 and 25. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Western Digital substantial injury in the State of Illinois.

    **A.**    **Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that

5

its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

**B. Western Digital Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Western Digital's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08-cv-400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the mark is likely to cause confusion among consumers. *Id.*

6

In this case, Western Digital's WD Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Tregillis Declaration at ¶ 8. The registrations for the WD Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 9. The registrations for the WD Trademarks constitute *prima facie* evidence of their validity and of Western Digital's exclusive right to use the WD Trademarks pursuant to 15 U.S.C. § 1057(b). *Id.* Furthermore, Western Digital has not licensed or authorized Defendants to use any of its WD Trademarks, and none of the Defendants are authorized retailers of genuine Western Digital Products. *Id*. at ¶ 18. Thus, Western Digital satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the WD Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Western Digital has submitted extensive documentation showing that Defendants are selling Counterfeit Western Digital Products that look similar to genuine Western Digital Products

7

and use counterfeit marks identical to the WD Trademarks. Western Digital's consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Western Digital Products from Counterfeit Western Digital Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Western Digital Products to purchase Counterfeit Western Digital Products instead. In that regard, Defendants advertise Counterfeit Western Digital Products under the WD Trademarks. Tregillis Declaration at ¶ 18. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Western Digital Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Western Digital is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### C. There Is No Adequate Remedy at Law, and Western Digital Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079,

8

1092 (7th Cir. 1988) . As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the WD Trademarks has and continues to irreparably harm Western Digital through diminished goodwill and brand confidence, damage to Western Digital's reputation, loss of exclusivity, and loss of future sales. Tregillis Declaration at ¶¶ 24-28. The extent of the harm to Western Digital's reputation and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Western Digital will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Tregillis Declaration at ¶ 29.

### D. The Balancing of Harms Tips in Western Digital's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Western Digital has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Western Digital will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim

9

to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Western Digital has demonstrated, Defendants have been profiting from the sale of Counterfeit Western Digital Products. Thus, the balance of equities tips decisively in Western Digital's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Western Digital's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Western Digital seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the WD Trademarks Is Appropriate

Western Digital requests a temporary injunction requiring the Defendants to immediately cease all use of the WD Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to Western Digital's WD Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the WD Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate

anonymously over the Internet. Western Digital is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Western Digital Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (order granting *ex parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Western Digital requests an *ex parte* restraint of Defendants' assets so that Western Digital's right to an equitable accounting of Defendants' profits from sales of Counterfeit Western Digital Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Western Digital meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) . In addition, Western Digital has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Western Digital is entitled, "subject to the principles of equity, to recover ... defendant's profits." Western Digital's Amended Complaint seeks, among other relief, that Defendants account for and pay to Western Digital all profits realized by Defendants by reason of

---

[1] Western Digital has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

11

Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Western Digital's request for a prejudgment asset freeze to preserve relief sought by Western Digital.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Western Digital has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### C.  Western Digital Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

12

Western Digital respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Western Digital's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Western Digital's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Western Digital respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Western Digital's evidence of counterfeiting, infringement, and unfair competition, Western Digital respectfully requests that this Court require Western Digital to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Western Digital's business, its famous Western Digital brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Western Digital Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Western Digital Products have been manufactured by or emanate from Western Digital, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar

cases, Western Digital respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 5th day of April 2017.  Respectfully submitted,

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Western Digital Technologies, Inc.*