**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., | ) ) | Case No. 17-cv-02575 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Andrea R. Wood |
| | ) | Magistrate Judge Maria Valdez |
| CHENGSKY2013, AFFORDDAILY, ALWAYSOUTLET, BESTBID818, CN-JINKA, DENTALOVE, FANGFANGZUO, FAST- SHIP-ITEM, GALAXYOND, 1GOPARTS_SHOPPING, HELLO2USA, HOTBID8088, IPHONA5S, LI3FEWIN1201, RDUJ6688, ROTARYTATTOO, 5SHINTENT2W6INCOLTD, SUPER-MEDICAL- SHOP, SWEEPWORLD, TI.H777, TOP5ZOOM, and YANHK14 | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ANSWER OF DEFENDANTS ALWAYSOUTLET et al**

Now Come Defendants ALWAYSOUTLET, BESTBID818, DENTALOVE, FAST-SHIP-ITEM, GALAXYOND, HELLO2USA, HOTBID8088, IPHONA5S, ROTARYTATTOO, SUPER-MEDICAL-SHOP and TOP5ZOOM, (collectively, "Defendants Alwaysoutlet et al") and as their Answer state as follows:

**I. JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action  pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are  so related to the federal claims that they form part of the same case or controversy and derive from  a common nucleus of operative facts.

ANSWER TO PARAGRAPH 1

Defendants Alwaysoutlet *et al* admit the Court has subject matter jurisdiction over

Lanham Act claims but deny the other allegations of the paragraph.

1

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase counterfeit versions of Western Digital product. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit versions of Western Digital product to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Western Digital substantial injury in the State of Illinois.

ANSWER TO PARAGRAPH 1

Denied.

## II.   INTRODUCTION

3.    This action has been filed by Western Digital to combat online counterfeiters who trade upon Western Digital's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including digital storage devices and systems, using counterfeit versions of Western Digital's federally registered trademarks (the "Counterfeit Western Digital Products"). The Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine Western Digital products, while actually selling Counterfeit Western Digital Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Western Digital Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Western Digital is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Western Digital Products over the Internet. Western Digital has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

ANSWER TO PARAGRAPH 3

Defendants Alwaysoutlet *et al* admit they operate a small number of eBay "stores" but

deny the other allegations with respect to them, and are without sufficient information

regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

## III. THE PARTIES

### Plaintiffs

4.     Plaintiff Western Digital Technologies, Inc. is a corporation duly organized and existing under the laws of the State of Delaware having its registered office at 5601 Great Oaks Parkway, San Jose, California 95138.

ANSWER TO PARAGRAPH 4

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the allegations, and accordingly, deny same.

5.     Founded in 1970, Western Digital has a long history in the electronics industry. For more than 40 years, Western Digital has been a leading developer and manufacturer of storage technologies and solutions that enable people, businesses, and other organizations to create, leverage, experience and preserve data. As an industry leader, Western Digital only produces and offers products that have been subjected to its rigorous manufacturing standards and stringent pre- shipping testing and quality control.

ANSWER TO PARAGRAPH 5

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the allegations, and accordingly, deny same.

6.     Western Digital is an internationally recognized manufacturer, distributor and retailer of a broad range of products, but its primary products include hard disk drives, solid state drives, and other related digital storage products and solutions, all of which prominently display its famous, internationally recognized and federally registered trademarks (collectively, the "Western Digital Products"). Western Digital Products have become enormously popular, driven by Western Digital's arduous quality standards and innovative design. Among the purchasing public, genuine Western Digital Products are instantly recognizable as such. In the United States and around the world, the Western Digital brand has come to symbolize high quality and reliability in data storage solutions, and Western Digital Products are among the most recognizable digital storage products in the world.

ANSWER TO PARAGRAPH 6

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the

allegations, and accordingly, deny same.

7.      Western Digital Products are distributed and sold to consumers through Western Digital's wdc.com website, as well as through authorized retailers throughout the United States, including leading electronics stores Best Buy, Costco Wholesale, and Staples, as well as numerous online retailers including newegg.com, computerdirect.com, and others. Western Digital's hard drives are regularly purchased and incorporated into computers and laptops sold by leading computer manufacturers including Hewlett-Packard, Dell Inc., and Apple Inc.

ANSWER TO PARAGRAPH 7

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the

allegations, and accordingly, deny same.

8.      Western Digital incorporates a variety of distinctive marks in the design of its various Western Digital Products. As a result of its longstanding use, Western Digital owns common law trademark rights in its WESTERN DIGITAL, WD and other trademarks. Western Digital has also registered its trademarks with the United States Patent and Trademark Office. Western Digital Products include at least one of Western Digital's registered trademarks. Western Digital uses its trademarks in connection with the marketing of its Western Digital Products, including the following marks, which are collectively referred to as the "WD Trademarks." [Table omitted from L.R. 10.1 Summary]

ANSWER TO PARAGRAPH 8

Defendants Alwaysoutlet *et al* admit that record title is in Plaintiff's name.

Defendants Alwaysoutlet *et al*, to the extent its goods are refurbished products originally

manufactured by Plaintiff, admit that Plaintiff's marks are on goods originating from

Plaintiff. Defendants Alwaysoutlet *et al* deny the remaining allegations.

9.      The above U.S. registrations for the WD Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The WD Trademarks have been used exclusively and continuously by Western Digital, some since as early as 1971, and have never been abandoned. The registrations for the WD Trademarks constitute *prima facie* evidence of their validity and of Western Digital's exclusive right to use the WD Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed WD Trademarks are attached hereto as Exhibit 1.

ANSWER TO PARAGRAPH 9

Defendants Alwaysoutlet *et al* admit that certain formalities appear to have been submitted with respect to said registrations, admit that copies were attached, deny that all the registrations are valid or unabandoned and denies the remaining allegations.

10.     The WD Trademarks are exclusive to Western Digital and are displayed extensively on Western Digital Products and in Western Digital's marketing and promotional materials.  Western Digital Products have long been among the most popular and recognizable digital storage products and solutions in the world, and have been extensively promoted and advertised at great expense. In fact, Western Digital has expended millions of dollars annually in promoting and marketing featuring the WD Trademarks. For instance, the WD Trademarks have been widely publicized through publications in many major international magazines, including, without limitation, Dwell, Wired, Rolling Stone, PC Adviser, PC Pro, and The Gadget Show Magazine.  Because of these and other factors, the WD Trademarks are famous throughout the United States.

ANSWER TO PARAGRAPH 10

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the allegations, and accordingly, deny same.

11.     The WD Trademarks are distinctive when applied to storage technologies and solutions, signifying to the purchaser that the products come from Western Digital and are manufactured to Western Digital's quality standards. Western Digital maintains rigorous quality control standards for all of its Western Digital Products, and all Western Digital Products are subject to these strict guidelines by Western Digital prior to distribution and sale. The WD Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the WD Trademarks is of incalculable and inestimable value to Western Digital.

ANSWER TO PARAGRAPH 11

Defendants Alwaysoutlet *et al* deny that the geographic term "western" and the descriptive term "digital" are distinctive and are without sufficient information to admit or deny the remaining allegations, and accordingly, deny same.

12.      Since at least as early as 1992, Western Digital has operated a website where it promotes and sells genuine Western Digital Products at wdc.com. Sales of Western Digital Products via the wdc.com website represent an important portion of Western Digital's business.  Western Digital's website wdc.com features proprietary content, images and designs exclusive to  Western Digital.

5

ANSWER TO PARAGRAPH 12

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the

allegations, and accordingly, deny same.

13.     Western Digital has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the WD Trademarks. As a result, products bearing the WD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Western Digital. Western Digital Products have become among the most popular of their kind in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Western Digital brand have made the WD Trademarks invaluable assets of Western Digital.

ANSWER TO PARAGRAPH 13

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the

allegations, and accordingly, deny same.

14.     Western Digital proactively protects the WD Trademarks against Counterfeit Western Digital Products. One measure of protection used by Western Digital is its recording of WD Trademarks with U.S. Customs authorities, which entitles Western Digital to specifically prevent the import of Counterfeit Western Digital Products. Another measure Western Digital undertakes to protect the WD Trademarks is execution of its worldwide anti-counterfeiting program. Western Digital's anti-counterfeiting program routinely and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Western Digital has identified, investigated and removed thousands of fully interactive online marketplace storefronts and listings on platforms such as iOffer, eBay, AliExpress, and Alibaba.

ANSWER TO PARAGRAPH 14

Defendants Alwaysoutlet *et al* are without sufficient information to admit or deny the

allegations, and accordingly, deny same.

**The Defendants**

15.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Western Digital

Products to consumers within the United States, including the State of Illinois.

ANSWER TO PARAGRAPH 16

Defendants Alwaysoutlet *et al* deny they are either individuals or business entities, admit they operate a small number of eBay "stores" but deny the other allegations with respect to them, and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

16.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the WD Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Western Digital to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Western Digital will take appropriate steps to amend the Amended Complaint.

ANSWER TO PARAGRAPH 16

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

17.     The success of the Western Digital brand has resulted in its significant counterfeiting. To combat against counterfeiting, Western Digital routinely investigates suspicious storefronts and listings on online marketplaces, including, the Defendant Internet  Stores that were offering for sale and selling Counterfeit Western Digital Products to consumers  in this Judicial District and throughout the United States.  Despite Western Digital's enforcement  efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites  similar to the Defendant Internet Stores are estimated to receive tens of millions of visits per year  and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail  price (MSRP) of counterfeit goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as  lost tax revenue every year.

ANSWER TO PARAGRAPH 17

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

18.    Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

ANSWER TO PARAGRAPH 18

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

19.    Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit listings from an authorized distributor's or reseller's listing. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Western Digital has not licensed or authorized Defendants to use any of the WD Trademarks, and none of the Defendants are authorized retailers of genuine Western Digital Products.

ANSWER TO PARAGRAPH 19

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

20.    Many Defendants also deceive unknowing consumers by using the WD Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Western Digital

Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Western Digital Products. Other Defendants only show the WD Trademarks in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Western Digital Products.

ANSWER TO PARAGRAPH 20

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

21.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Counterfeit Western Digital Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Western Digital Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and the use of the same text and images, including content copied from Western Digital's wdc.com website.

ANSWER TO PARAGRAPH 21

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

ANSWER TO PARAGRAPH 22

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

23.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Western Digital's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

ANSWER TO PARAGRAPH 23

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

24.     Defendants, without any authorization or license from Western Digital, have knowingly and willfully used and continue to use the WD Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Western Digital Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Western Digital Products into the United States, including Illinois.

ANSWER TO PARAGRAPH 24

Defendants Alwaysoutlet *et al* admit they did not have an express license to sell refurbished goods as no express license is necessary, but deny the other allegations as to them and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

25.     Defendants' use of the WD Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Western Digital Products, including the sale of Counterfeit Western Digital Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Western Digital.

ANSWER TO PARAGRAPH 25

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. § 1114)

26.     Western Digital hereby re-alleges and incorporates by reference the allegations
set forth in paragraphs 1 through 25.

ANSWER TO PARAGRAPH 26

Defendants Alwaysoutlet *et al* hereby re-alleges and incorporates by reference the

responses set forth in paragraphs 1 through 25.

27.     This is a trademark infringement action against Defendants based on their
unauthorized use in commerce of counterfeit imitations of the federally registered WD
Trademarks in connection with the sale, offering for sale, distribution, and/or advertising
of infringing goods. The WD Trademarks are highly distinctive marks. Consumers have
come to expect the highest quality from Western Digital Products offered, sold or
marketed under the WD Trademarks.

ANSWER TO PARAGRAPH 27

Defendants Alwaysoutlet *et al* admits the Complaint alleges trademark infringement,

deny the geographic term "western" and the descriptive term "digital" are distinctive, deny as

to their actions and are without sufficient information regarding the other Defendants as to

admit or deny the allegations, and accordingly, deny same.

28.     Defendants have sold, offered to sell, marketed, distributed and advertised, and
are still selling, offering to sell, marketing, distributing and advertising products using
counterfeit reproductions of the WD Trademarks without Western Digital's permission.

ANSWER TO PARAGRAPH 28

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

11

accordingly, deny same.

29.     Western Digital is the exclusive owner of the WD Trademarks in the United States. Western Digital's United States Registrations for the WD Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Western Digital's rights in the WD Trademarks, and are willfully infringing and intentionally using counterfeits of the WD Trademarks. Defendants' willful, intentional and unauthorized use of the WD Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Western Digital Products among the general public.

ANSWER TO PARAGRAPH 29

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding trademark title or the other Defendants as to admit or deny the

allegations, and accordingly, deny same.

30.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

ANSWER TO PARAGRAPH 30

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

31.     Western Digital has no adequate remedy at law, and if Defendants' actions are not enjoined, Western Digital will continue to suffer irreparable harm to its reputation and the goodwill of its well-known WD Trademarks.

ANSWER TO PARAGRAPH 31

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

32.     The injuries and damages sustained by Western Digital have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Western Digital Products.

ANSWER TO PARAGRAPH 32

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33.     Western Digital hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

ANSWER TO PARAGRAPH 33

Defendants Alwaysoutlet et al hereby re-alleges and incorporates by reference the responses set forth in paragraphs 1 through 32.

34.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Western Digital Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Western Digital or the origin, sponsorship, or approval of Defendants' Counterfeit Western Digital Products by Western Digital.

ANSWER TO PARAGRAPH 34

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

35.     By using the WD Trademarks on the Counterfeit Western Digital Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Western Digital Products.

ANSWER TO PARAGRAPH 34

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

36.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Western Digital Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

13

ANSWER TO PARAGRAPH 34

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

37.     Western Digital has no adequate remedy at law and, if Defendants' actions are not enjoined, Western Digital will continue to suffer irreparable harm to its reputation and the goodwill of its Western Digital brand.

ANSWER TO PARAGRAPH 37

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES
## ACT  (815 ILCS § 510, *et seq.*)

38.     Western Digital hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

ANSWER TO PARAGRAPH 38

Defendants Alwaysoutlet et al hereby re-alleges and incorporates by reference the

responses set forth in paragraphs 1 through 25.

39.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Western Digital Products as those of Western Digital; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Western Digital Products; representing that their Counterfeit Western Digital  Products have Western Digital's approval when they do not; and engaging in other conduct which  creates a likelihood of confusion or misunderstanding among the public.

ANSWER TO PARAGRAPH 39

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient

information regarding the other Defendants as to admit or deny the allegations, and

accordingly, deny same.

40.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

ANSWER TO PARAGRAPH 40

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

41.     Western Digital has no adequate remedy at law, and Defendants' conduct has caused Western Digital to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Western Digital will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

ANSWER TO PARAGRAPH 41

Defendants Alwaysoutlet *et al* deny as to their actions and are without sufficient information regarding the other Defendants as to admit or deny the allegations, and accordingly, deny same.

## DEFENSES OF ALWAYSOUTLET ET AL

1.     The Complaint fails to establish a likelihood of consumer confusion in Commerce that may be regulated by Congress.

2.     Western Digital has failed to attain requisite distinctiveness in its alleged marks because (a) Western Digital is not the exclusive user of the words "western" and "digital" and/or (b) such marks are generic, and/or (c) the relevant class of the consuming public, in the geographic location where Alwaysoutlet's product is sold, does not recognize such trade dress as an identifier of goods emanating from Western Digital and/or (d) the initials WD are understood by consumers to mean the geographic and descriptive phrase "western", "digital."

3.     One or more of Western Digital's registrations were filed or maintained using specimens that will be shown, upon information and belief based on facts uniquely in the

15

control of Western Digital , to not accurately support the facts alleged in the application or registration and said specimens were submitted upon information and belief based on facts uniquely in the control of Western Digital for the purpose of obtaining and maintaining registration and the Trademark Office relied on those specimens and facts to issue or maintain said registration, said inaccuracies and intent tainting the entire registration portfolio so as to make the registrations unenforceable.

4.      Alwaysoutlet *et al*'s goods were refurbished goods originally manufactured by, or under authority of, Western Digital and Western Digital's unrestricted sale of said goods exhausted Western Digital's rights and accordingly Western Digital cannot control downstream sales.

5.      Alwaysoutlet *et al* was required to identify Western Digital as the original source of the goods so as to avoid reverse passing off.

6.      Alwaysoutlet *et al* sold refurbished goods originally manufactured by, or under authority of, Western Digital and said goods included an implied license to identify the original source, model particulars and specifications of the goods.

7.      Alwaysoutlet *et al* at all times specified in its contracts with its supplier(s) that the goods purchased by and re-sold by Alwaysoutlet *et al* were "refurbished" and if Alwaysoutlet *et al* was the victim of breach of contract by its supplier(s) in that the goods are either not refurbished or were incorrectly marked, it was an innocent infringer.

8.      Alwaysoutlet *et al* at all times specified in its contracts with its supplier(s) that the goods purchased by and re-sold by Alwaysoutlet et al were "refurbished" and if Alwaysoutlet *et al* was the victim of breach of contract by its supplier(s) in that the goods are either not refurbished or were incorrectly marked, said facts comprise extenuating circumstances.

16

9.      Even if the goods sold by Alwaysoutlet et al are infringing, they are merely

infringing and not counterfeit.

<div style="margin-left:50%">

Respectfully submitted:

*David C. Brezina*

David C. Brezina
Ladas & Parry, LLP
224 South Michigan Avenue, #1600
Chicago, IL   60604
312.427.1300
Fax 312.427.6663
dbrezina@ladas.net

</div>

Mark Fang, Attorney At Law PC
400 Camarillo Ranch Road, Suite 203
Camarillo, CA 93012
(805) 383-2788
MFang@MarkFangAPC.com

### CERTIFICATE OF SERVICE

I hereby certify that I have this 23rd day of June, 2017, served a copy of the foregoing by filing with the US District Court ECF system which will electronically serve on the addressees below:

> Justin R. Gaudio  jgaudio@gbc.law
> Kevin W. Guynn  kguynn@gbc.law
> Amy C. Ziegler  aziegler@gbc.law
> Jessica L. Bloodgood  jbloodgood@gbc.law
> Greer, Burns & Crain, Ltd.
> 300 South Wacker Drive, Suite 2500
> Chicago, Illinois 60606
> 312.360.0080
> 312.360.9315 (facsimile)

DATED:  June 23, 2017

*David C. Brezina*
_____